### RYAN v. BURGER & HOWER BREWING Co., Limited.

(*Supreme Court, General Term, First Department.* March 13, 1891.)

1. ACTION ON THE CASE — UNLAWFUL COMBINATION — INJURY TO BUSINESS — SLANDER OF TITLE.

Plaintiff fitted up premises hired by him for a business which included the sale at retail of beer, which he purchased from R., a brewer.  He carried on the business successfully until defendant, a brewing company, made statements to R. and other brewers, all of whom, with defendant, were members of an association of brewers, that defendant had a claim against plaintiff's place and business, and that, if R. or any other brewer belonging to said association should continue to sell beer to that place or business, defendant, under an agreement between the members of the association, would hold R. or such other member liable for defendant's alleged claim and for damages.  Thereupon, and under threat of such penalty, R. discontinued the sale of beer to plaintiff's place, and other brewers of the association refused to sell beer to the place, causing damage to plaintiff by loss of business, so that he became insolvent, and was compelled to give up the business.  Defendant had no claim against plaintiff, but had a claim against his predecessor in the business at the same place, secured by mortgage of the latter's property in the place, which defendant had taken and removed before plaintiff hired the premises; but the rules of the association forbade any member of it to supply beer to the place until the debt to defendant was paid.  *Held,* that such combination was unlawful, and that defendant, having, without lawful excuse, employed defamatory matter to plaintiff's injury, was liable to him in damages therefor.

2. SAME—DAMAGES.

Plaintiff had expended $1,324.64 in and about the place, and was compelled to sell the fixtures for $100 instead of $1,700, which he might have obtained but for defendant's false assertion of a claim; and he sustained other pecuniary loss from the breaking up of his business.  *Held,* that a verdict for $1,525 damages was not excessive.

Appeal from circuit court, New York county.

Action by William W. Ryan against the Burger & Hower Brewing Company, Limited.  Defendant appeals from a judgment for plaintiff entered on the verdict of a jury, and from an order denying a motion for a new trial.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Ashbel P. Fitch,* for appellant.   *H. M. Gescheidt,* for respondent.

BRADY, J.   The plaintiff went into business in Brooklyn, and spent large sums of money in fitting up the premises hired by him for the purpose of successfully carrying it on.   His business involving the necessity of selling it at retail, he purchased lager-beer from Jacob Ruppert, a brewer of this city, which, with other commodities, made up his stock in trade.   His business not only was successful, but so continued until the defendant, and, as it is alleged, with the intent and purpose to injure his credit, reputation, business, and standing, uttered concerning him and his business false and defamatory matter, the allegation of which is as follows: "(4) The plaintiff alleges on information and belief that on or about the 15th day of December, 1888, and from said time down to the 5th day of March, 1889, continually, in the city

of New York and in the city of Brooklyn, state of New York, the defendant, by and through its officers, agents, and servants, on behalf and by authority of the defendant, maliciously and falsely stated, caused to be stated, published, and declared in the English language to the said Jacob Ruppert, his attorney, agents, and servants, Maurice Ahern, Mr. McLaughlin, Brewers' Union or Association, Brewers' Exchange of N. Y., Brewers' Pool Association, (commonly so called,) or the Lager-Beer Brewers' Board of Trade of N. Y. and Vicinity, to any or all of the members of any or all of said associations, of either of which defendant is a member, and to other persons who are unknown at present to the plaintiff, with intent and purpose to injure the credit, reputation, business, and standing of the plaintiff aforesaid, all of which persons heard and understood the English language concerning plaintiff and his business aforesaid, the false and defamatory matter following, to-wit:   That said corporation [the defendant herein] has a claim, mortgage, and demand against the place and business aforesaid, and that, if the said Jacob Ruppert or any other brewer or brewery that belongs with the defendant to an association for the mutual interest and benefit of the brewers and breweries that belong thereto, would continue to deliver beer or sell beer to the place of business of the plaintiff aforesaid, the defendant, under an agreement, stipulation, statement, or understanding with the members of said association, would hold said Ruppert and other members thereof liable to pay the alleged claim against said place aforesaid, with damages for the continuation of the delivery and sale of beer to said place.   (5) That at the times aforesaid, when said false and defamatory statement was made concerning plaintiff's place and business aforesaid, the same was false, defamatory, and untrue, and known by the defendant to be so; that the plaintiff was perfectly solvent,—had credit,—no claims whatsoever being against said place; that said Jacob Ruppert, from the false and defamatory statement and publication as aforesaid, was induced to discontinue, and did discontinue, under threat of penalty, according to an agreement with the defendant and others aforesaid, to deliver and sell beer to said place, and other brewers and breweries that belonged to the association with said Ruppert and defendant and others aforesaid refused, under threat of penalty, according to an agreement with the defendant and others aforesaid, to sell and deliver beer to said place on account of the false and defamatory statement and publication made by the defendant aforesaid; and Julius Wollman and other merchants refused to give this plaintiff credit for merchandise on account of said false and defamatory statement and publication as aforesaid; and through said false and defamatory statement and publication the plaintiff lost customers, whose names are unknown at present to him, and his business fell off from the average of $25 to $30 per day to the average of $2 to $5 per day, thereby causing plaintiff to lose the income thereof of the average of about $10 per day, and causing him to become insolvent, to lose his credit, in arrear of rent, the forfeiture of deposit of rent under said lease, and failure in said business, loss of said profits and enjoyment thereof, whereby the plaintiff was compelled to give up and discontinue said business, and the plaintiff became injured and damaged thereby in the sum of $20,000."   The statements complained of were false and defamatory, and the result was that the plaintiff was unable to get beer from the brewers from whom he wished to buy, his business ruined, and he compelled to sell his place.   The defendants had a claim against his predecessor, secured by a personal mortgage upon the articles which were in his saloon or restaurant, and of which they took possession, and which they had removed prior to the demise to the plaintiff.   The place was not theirs, and they had no claim upon it, but asserted the existence of one by virtue of articles of association between certain brewers and themselves, who had banded together ostensibly for mutual protection, and by the rules or regulations of which it seems they could ostracize or stigmatize not only the debtor, but the "place" he for-

merly occupied, although they had, as suggested, no claim upon it, and thus in effect prevent its occupancy for the sale of beer unless the debt due from the former debtor was paid. It was in effect a fictitious mortgage on the place, thus created by the despotic act of this association, affecting and checking the enterprise of the tenant on the premises, and paralyzing the efforts of the owner to let his tenement for any business connected with the sale of lager-beer until the fictitious mortgage should be paid and discharged. This, if not a novel, is certainly an unlawful, proceeding, having the double effect of injuring a business and slandering the owner's title to the tenement in which it was carried on, against neither of which could there be in a case kindred to this the slightest propriety of saying anything detrimental. Such a combination for such a purpose is in the highest degree despotic, and subversive of the principles of our government. There is no recognition of the old adage of "live and let live;" indeed, its converse is adopted and enforced. The proof is abundant that the defamatory matter was employed by the defendant to the injury of the plaintiff. The whole subject was presented to the jury in an elaborate charge upon all the evidence, to which no exception was taken by the defendant, and in relation to which no requests were made to charge. The defense, it may be said, was meager; the struggle having been apparently more to lessen the damages than to justify the conduct complained of. The salient points of such a controversy as this have recently been the subject of review, developing the principles governing the plaintiff's case. In *Moore* v. *Francis*, 121 N. Y. 199, 23 N. E. Rep. 1127, Justice ANDREWS said in the course of his opinion: "The cases of actionable slander were defined by Chief Justice DE GREY in the leading case of *Onslow* v. *Horne*, 3 Wils. 177, and the classification there made has been generally followed in England and this country." The third class mentioned in that case embraces words which tend to injure a party in his trade, occupation, or business. "The law allows this form of action," he said, "not only to protect a man's character as such, but to protect him in his occupation," although no fraud or dishonesty is charged, and although the words were spoken without actual malice. "It recognizes," he also said, "the right of a man to live, and the necessity of labor;" and again, that the principle is clearly stated by BAYLEY, J., in *Whittaker* v. *Bradley*, 7 Dowl. & R. 649, thus: "Whatever words have a tendency to hurt or are calculated to prejudice a man who seeks a livelihood by any trade or business are actionable." And the doctrine is declared that, when proved to have been spoken in relation thereto, the action is supported; and, unless the defendant shows a lawful excuse, the plaintiff is entitled to recover, without allegation or proof of special damage, because the falsity of the words and resulting damage are presumed. The damages were assessed by the jury at $1,525, for which they gave their verdict. This sum was not excessive. The plaintiff gave a detailed statement of his expenditures in and about the place, amounting to $1,324.64; and it appears that he was compelled to sell the fixtures for $100, against $1,700, for which he might have sold the place and its surroundings had it not been for the ruinous consequences of the defendant's false assertion that it had a claim on the place, to which reference has already been fully made. In addition to this, the jury had a right to consider the pecuniary loss sustained by the plaintiff in consequence of the breaking up of his business. There appears no reason to withhold an affirmance of the judgment appealed from, and it should be affirmed, with costs. All concur.